UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STERLING SAVINGS BANK, a Washington chartered bank; and STERLING FINANCIAL CORPORATION, a Washington corporation,<br><br>    Plaintiffs,<br><br>    v.<br><br>HEIDI B. STANLEY, a married woman,<br><br>    Defendant. | NO. CV-12-214-EFS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, ENTERING JUDGMENT IN DEFENDANT'S FAVOR, AND CLOSING FILE** |

A hearing occurred in the above-captained matter on August 22, 2012, in Spokane.  Plaintiffs Sterling Savings Bank and Sterling Financial Corp. (collectively, "Sterling") were represented by Gregory Hollon. Nicholas Kovarik and Bob Dunn appeared for Defendant Heidi B. Stanley, who was present.  Before the Court was Mrs. Stanley's Motion for Summary Judgment, which asks the Court to find that the following "TARP laws" do not preclude Sterling from either voluntarily or involuntarily paying discrimination damages to Mrs. Stanley under RCW 49.60 *et seq.*: the Troubled Asset Relief Program; the Emergency Economic Stabilization Act of 2008; the American Recovery and Reinvestment Act of 2009; 31 C.F.R. part 30; and 12 C.F.R. part 359.  ECF No. 22.  After reviewing the

ORDER ~ 1

submitted material and relevant authority and hearing from counsel, the Court is fully informed.  This Order supplements and memorializes the Court's oral ruling granting Mrs. Stanley's motion.

**A.   Background[1]**

In 1985, Mrs. Stanley began her career at Sterling.  After twenty-three years with Sterling, she was selected as Sterling's Chief Executive Officer (CEO).  She and Sterling executed an employment contract, which contained a severance-pay provision.  Months after the execution of the employment contract, Sterling requested that Mrs. Stanley amend the employment contract to revoke the severance-pay provision because Sterling wished to receive "bailout" funds from Congress and the TARP laws prohibited Sterling from paying a golden parachute payment, including severance pay, to a senior executive officer.  Mrs. Stanley signed the amendment.

In May 2009, Mrs. Stanley was diagnosed with breast cancer.  She continued working while receiving treatment.  In October 2009, Sterling fired Mrs. Stanley.  Mrs. Stanley claims her termination was wrongfully

---

[1] When considering this motion and creating this factual section, the Court 1) believed the undisputed facts and the non-moving party's evidence, 2) drew all justifiable inferences therefrom in the non-moving party's favor, 3) did not weigh the evidence or assess credibility, and 4) did not accept assertions made by the non-moving party that were flatly contradicted by the record.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Scott v. Harris*, 550 U.S. 372, 380 (2007).

ORDER ~ 2

based on her gender and medical condition; Sterling contends it fired Mrs. Stanley because it was unable to raise the necessary operating capital absent new management.

On April 20, 2012, Mrs. Stanley and her husband filed a complaint in state court alleging discrimination under RCW 49.60 *et seq.* and loss of consortium. On May 18, 2012, Sterling removed the lawsuit to federal court. E.D. Wash. CV-12-357-EFS, ECF No. 1. On July 19, 2012, the Court granted the Stanleys' motion to remand the discrimination lawsuit to state court. E.D. Wash. CV-12-357-EFS, ECF No. 16.

Sterling filed the instant federal lawsuit on April 19, 2012, asking the Court to declare that any severance or related benefit conferred to Mrs. Stanley would constitute a prohibited golden parachute payment under the TARP laws. ECF No. 1. In its response to Mrs. Stanley's June 28, 2012-filed summary judgment motion, ECF No. 22, Sterling argues that the TARP laws' golden-parachute-payment extends to a discrimination damages award.

**B.  Standard**

Summary judgment is appropriate if the record establishes "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party opposing summary judgment must point to specific facts establishing a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).

///

ORDER ~ 3

**C. Authority and Analysis**

There is no dispute that Mrs. Stanley was a senior executive officer at Sterling, which was a troubled financial institution that obtained "bailout" funds and therefore is restricted by the TARP laws from making a golden parachute payment to her. What is disputed is whether the discrimination damages that Mrs. Stanley seeks from Sterling in the state-court lawsuit are encompassed in the TARP laws golden-parachute-payment prohibition.

Congress's, and the agencies', aim when enacting the TARP laws and regulations was to stabilize the financial markets. This stabilization plan included restricting a troubled financial institution's ability to pay its top five senior executive officers golden parachute payments. 12 U.S.C. § 5221(b)(3)(C); 12 C.F.R. § 359.0(b); 31 C.F.R. § 30.9.

Congress defines a golden parachute payment as "any payment to a senior executive officer for departure from a company for any reason, except for payments for services performed or benefits accrued." 12 U.S.C. § 5221(a)(2). The related regulations enacted by the U.S. Department of Treasury[2] and Federal Deposit Insurance Corporation also define golden parachute payment. Although each definition uses slightly different language, they each focus on the following requirements:

---

[2] Congress tasked the Secretary of the Treasury with establishing executive compensation standards to which TARP recipients must abide. 12 C.F.R. § 5221(b)(2). The U.S. Treasury did so through 31 C.F.R. pt. 30 *et seq. See also* 12 C.F.R. § 359.1

ORDER ~ 4

1)    any payment to a senior executive officer by the troubled financial institution;

2)    the payment is for the senior executive officer's departure from the troubled financial institution; and

3)    the payment is not for services performed or benefits accrued.

*See* 12 U.S.C. § 5221(a)(1-3); 12 C.F.R. § 359.0(b) (identifying that a golden parachute payment is "generally considered" to include the above requirements); 12 C.F.R. § 359.1(f) (defining a golden parachute payment as any payment that is "contingent on" the termination of employment); 31 C.F.R. § 30.1 (identifying a golden parachute payment as "any payment for the departure from a TARP recipient for any reason . . . except for services performed or benefits accrued").

Sterling focuses on the "any payment" language contained in § 5221(a)(2) and the applicable regulations to argue that the TARP laws prohibit the payment of a discrimination-damages award to a senior executive officer. However, Sterling reads the "any payment" language in a vacuum and without reference to the other requirement that the payment be for the departure of the senior executive officer. The regulations amplify this "departure" requirement by explaining that the payment must be "contingent on" the employee's departure from the financial institution, 12 C.F.R. § 359(b)(0), or "made for [the employee's] departure," 31 C.F.R. § 30.9, or "for the departure from a TARP recipient," 31 C.F.R. § 30.1.

An employee who is fired as a result of her employer's discriminatory conduct is not "departing" from the employer as that term is envisioned by the TARP laws. This is because, but for the wrongful

ORDER ~ 5

termination, the employee would not have departed. Therefore, any damages awarded to this wrongfully-terminated employee is not payment "made for the departure" or "contingent on" the employee's departure, but rather is to compensate the wrongfully-terminated employee for being unable to continue receiving wages. Similarly, emotional distress damages are not "made for the departure" or "contingent on the departure" but rather are contingent on the fact-finder finding that the employer's wrongful termination caused the employee emotional distress.

Further, an award of lost wages in a employment-discrimination lawsuit is essentially a payment for services performed. Therefore, the Court's interpretation of the TARP laws is supported by § 5221(a)(2)'s exclusion for "payments for services performed or benefits accrued"; and the applicable regulations contain similar exceptions. 12 C.F.R. § 359.0(b) (excluding payments pursuant to qualified retirement plans, nonqualified bona fide deferred compensation plans, nondiscriminatory severance pay plans, and other types of common benefit plans, state statutes and death benefits); 31 C.F.R. § 30.1(2)(ii) (excluding "[a]ny payment made by reason of the employee due to the employee's death or disability").

Accordingly, the TARP laws' language supports a finding that Congress did not intend to alter the right of a wrongfully-terminated senior executive officer "to recover actual damages for discrimination." *Burchfiel v. Boeing Corp.*, 149 Wn. App. 468, 485 (2009). For these reasons, the Court finds Mrs. Stanley, if she succeeds on her state-court discrimination claim, may recover lost wages, future wages, and emotional

distress damages.[3]  The merit of Mrs. Stanley's discrimination claim is a matter for the state court.

**D.   Conclusion**

For the reasons stated on the record and supplemented herein, **IT IS HEREBY ORDERED:**

1.   Defendant's Motion for Summary Judgment, **ECF No. 22**, is **GRANTED**.

2.   Judgment is to be entered in Defendant's favor.

3.   All pending dates and deadlines are **STRICKEN.**

4.   This file shall be **CLOSED.**

**IT IS SO ORDERED.** The District Court Executive is directed to enter Order and provide copies to counsel.

**DATED** this  23rd   day of August 2012.


                            s/Edward F. Shea
                            EDWARD F. SHEA
                     Senior United States District Judge

Q:\EFS\Civil\2012\0214.msj.tarp.lc1.wpd

---

[3]  The Court understands that Mrs. Stanley's request for benefits does not include a request for severance, lost retirement, or lost benefits.

ORDER ~ 7